**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ARMCO, INCORPORATED,

*Petitioner,*

v.

JAMES C. MARTIN; CHAFE MINING
COMPANY, INCORPORATED; CHARLES
LIEBERMAN; DIRECTOR, OFFICE OF
WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF
LABOR,

*Respondents.*

No. 01-1278

On Petition for Review of an Order
of the Benefits Review Board.
(00-404-BLA)

Argued: November 2, 2001

Decided: January 14, 2002

Before NIEMEYER and LUTTIG, Circuit Judges, and
Frank J. MAGILL, Senior Circuit Judge of the
United States Court of Appeals for the Eighth Circuit,
sitting by designation.

Petition for review denied and Board affirmed by published opinion.
Judge Niemeyer wrote the opinion, in which Judge Magill joined.
Judge Luttig wrote an opinion concurring in the judgment.

## COUNSEL

**ARGUED:** Douglas Allan Smoot, JACKSON & KELLY, P.L.L.C.,
Morgantown, West Virginia, for Petitioner. Sarah Marie Hurley,

UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondents. **ON BRIEF:** Kathy L. Snyder, JACKSON & KELLY, P.L.L.C., Morgantown, West Virginia, for Petitioner. Donald S. Shire, Associate Solicitor, Christian P. Barber, Counsel for Appellate Litigation, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondents.

---

## OPINION

NIEMEYER, Circuit Judge:

On James Martin's application for black lung benefits, filed in 1989, the Benefits Review Board ordered the payment of benefits and found Armco, Inc. to be the responsible coal mine operator, even though Martin was employed by two other coal mine operators after his layoff by Armco in 1982. In its petition for review, Armco contends that under 20 C.F.R. § 725.493 (1999), Babcock Mining Company, Martin's most recent employer, qualified as the responsible operator and that because the Director of the federal Office of Workers' Compensation Programs ("Director") failed to join Babcock Mining as a party, Martin's benefits should be paid by the Black Lung Disability Trust Fund, not by Armco. Armco also raises issues for the first time on appeal, challenging the award of benefits to Martin. For the reasons that follow, we deny Armco's petition for review and affirm the decision and order of the Board.

I

James Martin, of Beckley, West Virginia, filed a claim for black lung benefits with the United States Department of Labor's Office of Workers' Compensation Programs on January 4, 1989. He had not worked for over two years because of a back injury; but before December 11, 1986, when he quit working, Martin had worked underground in coal mines as an electrician for 13 years. The last three employers for whom he worked in coal mines were:

| | |
|---|---|
| Armco, Inc. | Feb. 1979 - July 1982 (3 years, 5 months) |
| Chafe Mining Co. | Nov. 1982 - Nov. 1985 (3 years) |

Babcock Mining Co.    June 1986 - Dec. 1986 (6 months)

The Department of Labor forwarded notice of Martin's claim to Chafe Mining and to Armco as potential responsible employers. It did not forward notice to Babcock Mining because it concluded that Babcock Mining could not be a responsible operator since Martin worked for that company for less than one year. *See* 20 C.F.R. § 725.493 (1999). Because of disputes over the determination of the responsible operator, the procedural course within the Department of Labor was protracted.

The district director of the Department of Labor initially denied Martin's application for benefits on June 29, 1989. He later denied Martin's offer to include additional evidence as untimely. But upon Martin's request, he forwarded Martin's claim to the Office of Administrative Law Judges for a hearing.

Before the Administrative Law Judge ("ALJ"), Armco filed a motion to dismiss the claim against it on the basis that it was not the responsible operator or, in the alternative, to remand to the district director for a determination of who the proper responsible operator was. In its motion, Armco stated that "[t]he miner lists only six months of employment with [Babcock Mining] thus, presumably, Babcock Mining Co., is not the responsible operator as defined by 20 C.F.R. § 725.492." Armco therefore asserted that the next most recent employer, Chafe Mining, was the responsible operator. The Director agreed with Armco's assessment of responsibility, but opposed dismissal. Instead, he favored a remand to the district director for further evidentiary development. Accordingly, the ALJ remanded the claim for a determination of the "putative responsible operator."

On remand, the district director concluded that the most recent responsible operator was Chafe Mining. Chafe Mining, however, was not a viable company because it had filed for bankruptcy and was no longer an active corporation. The former principal of Chafe Mining (its president, secretary, and treasurer), Charles Lieberman, would be responsible individually, but Lieberman submitted information showing that he lacked the financial capacity to assume liability for Martin's claim. Accordingly, the district director concluded, in a decision and order of July 10, 1991, that Lieberman was liable for the claim

and, "[s]hould it be determined that Charles Lieberman does not have the wherewithal to assume liability or he is otherwise found not liable in this matter, Armco, Inc. will be liable as the secondary operator in this claim." The matter was then referred back to the ALJ for a hearing.

Following a hearing on both the merits of Martin's claim and the responsible operator issue, the ALJ issued his decision and order on August 18, 1993, concluding that Martin was entitled to benefits. Considering the x-ray evidence, the ALJ concluded that "true doubt" existed as to whether or not the three x-rays demonstrated the existence of pneumoconiosis, and, pursuant to the law then applicable, he resolved that doubt in favor of Martin. The ALJ also considered medical evidence and decided that the reasoned medical opinions presented in the case established the existence of pneumoconiosis. With respect to the responsible operator, the ALJ concluded that Babcock Mining was the most recent employer to have employed Martin for a cumulative period of one year. Even though Martin had worked at Babcock Mining for only six months, he worked for more than 125 working days during that period, and, according to the ALJ, he therefore satisfied the one-year requirement of 20 C.F.R. § 725.493(b). Because the Director had not joined Babcock Mining as a potential responsible operator, the ALJ transferred liability to the Black Lung Disability Trust Fund ("Trust Fund"). The ALJ also determined that Chafe Mining and its former president, Lieberman, were not capable of assuming liability for the payment of benefits if it were later determined that benefits should not be paid by the Trust Fund.

The Director appealed this decision, and on appeal, the Benefits Review Board affirmed the award of benefits to Martin. It agreed with the ALJ's decision not to join Babcock as a responsible operator because the Director had failed to name Babcock Mining in the initial stages of the claim. But it observed that the ALJ never addressed Armco's potential liability as a responsible operator. Accordingly, the Board vacated the ALJ's finding that the Trust Fund was liable for Martin's benefits and remanded the claim to the ALJ for further consideration of the responsible operator issue.

On remand, the ALJ again found the Trust Fund liable for Martin's black lung benefits. It reasoned that Babcock Mining was the most

recent responsible operator, as defined by applicable regulations, and because Babcock Mining was not joined, the Trust Fund would be liable. The Director again appealed this determination to the Board.

Once again, the Board vacated the ALJ's assignment of liability to the Trust Fund and remanded the case for further consideration by the ALJ. In its opinion, the Board specifically disagreed with the ALJ's conclusion that a miner who establishes that he worked for at least 125 days must be credited with one year of coal mine employment.

On remand, this time before a different ALJ, Armco was found to be the responsible operator and was ordered to pay benefits to Martin. In reaching its conclusion, the ALJ agreed with the Board that Babcock Mining could not be named the responsible operator because Babcock Mining did not employ Martin for at least one calendar year. The ALJ also agreed that both Chafe Mining and its president, Lieberman, were financially incapable of assuming liability for the claim. The ALJ therefore concluded that Armco, as the next most recent operator who satisfied all of the criteria of a responsible operator, was liable. The ALJ reversed the finding that the Trust Fund was liable for payment of Martin's benefits and ordered Armco to pay the benefits. Armco appealed this decision to the Board, challenging only the ALJ's designation of Armco as the responsible operator.

On appeal before the Board for the third time, the Board issued a decision and order dated January 5, 2001, affirming the ALJ's determination that Armco is the responsible operator. From that decision and order, Armco petitioned this court for review.

II

Armco's principal argument on appeal is that it is not the coal mine operator statutorily responsible for paying Martin's black lung benefits. While it agrees that the operator responsible is the one "with which the miner had the most recent periods of cumulative employment of not less than 1 year," 20 C.F.R. § 725.493(a)(1), it argues that Babcock Mining is the operator that meets that description under the provisions of 20 C.F.R. § 725.493(b). It maintains that subsection (b) provides that the one-year employment requirement is satisfied by demonstrating that the employee worked "for a period of at least 125

working days." *Id.* Because Martin worked for Babcock Mining from June 11, 1986, to December 11, 1986, a period of at least 125 working days, it asserts that Babcock Mining, not Armco, is the "most recent" employer with whom Martin worked "not less than one year" and therefore is responsible for paying Martin's black lung benefits. Because Babcock Mining was not properly joined in this action, Armco argues that liability for the payments therefore should revert to the Trust Fund.

Alternatively, Armco contends that because the Director breached its duty to ensure that Chafe Mining — a more recent employer than Armco — had secured its future liability for the payment of benefits, Chafe Mining's inability to pay should result in benefits being paid out of the Trust Fund rather than by Armco. Had the Director required Chafe Mining to secure its benefits' obligations, Chafe Mining would have been the responsible operator, not Armco.

The Director contends that, consistent with the Department of Labor's standing interpretation of 20 C.F.R. § 725.493, the responsible operator is the one for whom the employee *regularly* worked for one calendar year. The Director argues that the 125-day requirement of § 725.493(b) relates only to the determination of whether the employee worked *regularly* during the year and is not a definition of the one-year requirement. In response to Armco's alternative argument, the Director contends that the Department of Labor's enforcement decisions are irrelevant to a court's adjudication of the issues. The Director's decision whether to ensure that coal mine operators have secured their future liability is discretionary. Thus, this court would have no legal authority to require payment from the Trust Fund based on the Director's failure to ensure that Chafe Mining would be able to pay any future liability. Because Armco meets the statutory and regulatory definition of a "responsible operator," the Trust Fund cannot be liable.

Because resolution of who is the responsible operator is determined in this case by statutory interpretation, our review is plenary. *See Dehue Coal Co. v. Ballard*, 65 F.3d 1189, 1193 (4th Cir. 1995).

The Black Lung Benefits Act holds coal mine operators responsible for paying black lung benefits to miners who worked for them

after December 31, 1969. *See* 30 U.S.C. § 932. As authorized by that Act, the Secretary of Labor has, by regulation, apportioned operator liability in circumstances where the miner has worked for more than one operator. *See* 20 C.F.R. §§ 725.492 & 725.493 (1999) (subsequently amended).

According to 20 C.F.R. § 725.493(a) (1999), the "responsible operator" — the operator responsible for paying black lung benefits to a miner — is "the operator or other employer with which the miner had the most recent periods of cumulative employment of not less than 1 year" and who also meets the other requirements set out in 20 C.F.R. § 725.492(a).[1] Section 725.493(b) defines the one-year-of-employment requirement as follows:

> [A] year of employment means a period of 1 year, or partial periods totaling 1 year, during which the miner was regularly employed in or around a coal mine by the operator or other employer. Regular employment may be established on the basis of any evidence presented, including the testimony of a claimant or other witnesses, and shall not be contingent upon a finding of a specific number of days of employment within a given period. However, if an operator or other employer proves that the miner was not employed by it for a period of at least 125 working days, such operator or other employer shall be determined to have established that the miner was not regularly employed for a cumulative year by such operator or employer for purposes of paragraph (a) of this section.

20 C.F.R. § 725.493(b) (1999).[2]

---

[1]The other requirements for operator liability, which are not at issue in this case, are that the miner's disability or death must have arisen, at least in part, out of his employment with that operator; the operator must have operated a coal mine or other facility for any period after June 30, 1973; the miner must have worked for the operator for at least one day after December 31, 1969; and the operator must be capable of providing for the payment of benefits. 20 C.F.R. § 724.492(a) (1999).

[2]The term "one year" is also used and defined in 20 C.F.R. § 718.301 (1999), the section setting out when miners are eligible for various pre-

A straightforward reading of § 725.493(b)'s language reveals a two-step inquiry for determining operator liability. Under the first step, a court must determine whether a miner worked for an operator for "a period of one year, or partial periods totaling one year." 20 C.F.R. § 725.493(b) (1999). If the court determines that this one-year requirement has been met, it must then undertake the second inquiry of whether a miner's employment during that one year was "regular," i.e. whether, during the one year, the miner "was *regularly employed* in or around a coal mine." *Id.* (emphasis added).

The remainder of subsection (b) is devoted to the question of how to determine "regular employment." The next sentence explains that "[*r]egular employment* may be established on the basis of any evidence presented, including the testimony of a claimant or other witnesses, and shall not be contingent upon a finding of a specific number of days of employment within a given period." *Id.* (emphasis added). The sentence thereafter establishes that if this evidence reveals that "the miner was not employed by [the operator] for a period of at least 125 working days, such operator or other employer shall be determined to have established that the miner was not *regularly employed* for a cumulative year." *Id.* (emphasis added). Finally, for establishing the 125-day minimum for *regular employment*, the subsection defines a working day to be "[all] or part of a day for which a miner received pay." *Id.* (emphasis added). All three sentences thus define "regular employment" and do not undermine the threshold requirement of one year of employment.

---

sumptions set out in the Black Lung Benefits Act. Section 718.301(b) states that "a year of employment means a period of one year, or partial periods totaling one year, during which the miner was regularly employed in or around a coal mine by the operator or other employer" and that "[i]f an operator or other employer proves that the miner was not employed in or around a coal mine for a period of at least 125 working days during a year, such operator or other employer shall be determined to have established that the miner was not regularly employed for a year for purposes of this section." Thus, we agree with the parties that the term "one year," as used in both provisions, should have the same meaning. *See Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 479 (1992); *Dorsey Trailers, Inc. v. NLRB*, 233 F.3d 831, 843 (4th Cir. 2000).

In short, to satisfy the requirements of subsection (b), it must be shown that (1) a miner worked for the coal mine operator for one year or partial periods totaling one year and (2) the miner worked regularly during that one-year period. To fulfill the requirement of working "regularly," the subsection imposes a minimum of 125 working days. Thus, the regulations provide that responsible operator liability does not arise unless an operator employed a miner for one calendar year during which the miner regularly worked for that operator, defining "regularly worked" to be a minimum of 125 work days.

This position has been maintained by the Director. *See Croucher v. Director, OWCP*, 20 Black Lung Rep. (MB) 1-68, at 1-72 to 1-73 (Aug. 29, 1998). And further support is provided by the fact that the Department of Labor recently revised the regulations at issue to clarify its intent to hold operators liable for the payment of benefits only if they had regularly employed the miner for a full calendar year. In 20 C.F.R. § 725.494(c) (2001), the Department of Labor states that an operator is a responsible operator only if the miner at issue "was employed by the operator . . . for a cumulative period of not less than one year." The section then references 20 C.F.R. § 725.101(a)(32) (2001), which defines a "year" as "a period of one calendar year (365 days, or 366 days if one of the days is February 29), or partial periods totaling one year, during which the miner worked in or around a coal mine or mines for at least 125 'working days.'" Although these later revisions do not bind our interpretation of the regulations as they stood at the time of the claim's resolution, they do inform our analysis of what the earlier, less clearly written regulations were intended to mean.

In reaching this conclusion, we also join the Tenth and Third Circuits, which have interpreted § 725.493 in the same way. *See Northern Coal Co. v. Director, OWCP*, 100 F.3d 871, 876 (10th Cir. 1996) (interpreting 20 C.F.R. § 725.493(b) to include "two distinct requirements regarding a miner's employment in order to find that an employer is a 'responsible operator': (1) a miner must have been employed by the employer for not less than one year; and (2) during the one-year employment period a miner must have been employed for 'at least 125 working days' in order for the employment to be deemed 'regular'"); *Director, OWCP v. Gardner*, 882 F.2d 67, 71 (3d. Cir. 1989) (holding that the term "one year" in 20 C.F.R.

§ 725.493 means "a period spanning 365 days"). *But see Landes v. OWCP*, 997 F.2d 1192, 1195 (7th Cir. 1993) (equating a miner's work for 125 days to "one year of work"); *Yauk v. Director, OWCP*, 912 F.2d 192, 195 (8th Cir. 1989) (holding that, for purposes of 20 C.F.R. § 718.301(b), if a miner works for 125 days, "the miner will be credited with one year of coal mine employment"). As the Third Circuit explained, this two-step inquiry means that "the one-year employment requirement sets a floor for the operator's connection with the miner, below which the operator cannot be held responsible for the payment of benefits. The 125-day limit relates to the minimum amount of time the miner may have been exposed to coal dust while in the employment by the operator." *Gardner*, 882 F.2d at 69-70.

Because Babcock Mining employed Martin for only six months — from July 11, 1986, to December 11, 1986 — Babcock Mining was not a responsible operator as defined by 20 C.F.R. § 725.493 (1999). The next most recent operator was Chafe Mining, but it did not secure its future liability for the payment of black lung benefits and therefore could not be a "responsible operator." *See* 20 C.F.R. § 725.492(a)(4) (1999). Accordingly, the next most recent operator was Armco, who did meet all of the requirements for responsible operator liability.

Armco argues alternatively that even if Babcock Mining is not the responsible operator, Chafe Mining, the next most recent employer, employed Martin for a period longer than one year. Armco asserts that because the Director erred in failing to ensure that Chafe Mining secured its future ability to pay benefits, the responsibility for those benefits should be borne by the Trust Fund. We find this argument to be without merit.

The regulations anticipate and provide for the situation where a potentially responsible operator is financially unable to pay a miner's benefits. Section 725.492 establishes four requirements that must be satisfied before an operator is determined liable for the payment of benefits, including the requirement that "[t]he operator or the employer shall be capable of assuming its liability for the payment of continuing benefits." 20 C.F.R. § 725.492(a)(4) (1999). Because Chafe Mining is not capable of paying continuing benefits, a factual finding that Armco does not challenge, the Board properly concluded that Chafe Mining cannot be the responsible operator. After finding

Chafe Mining incapable of being the responsible operator, the Board correctly looked to the next most recent employer for whom Martin worked at least one year — Armco. Having concluded that Armco met all of the requirements of 20 C.F.R. §§ 725.492 and 725.493, the Board properly found Armco to be the operator responsible for paying benefits to Martin.

Because the regulations call for finding the operator who meets all the criteria of a responsible operator rather than having liability revert to the Trust Fund if the first potentially responsible operator does not meet all the criteria, we find no basis for requiring the payment of Martin's benefits out of the Trust Fund.

We therefore affirm the Board's designation of Armco as the responsible operator in this case.

## III

Armco raises three additional issues that it did not present to the Board. First, Armco contends that the procedures used in deciding whether to award benefits have been changed by the Supreme Court's decision in *Director, OWCP v. Greenwich Colliers*, 512 U.S. 267 (1994) (invalidating the "true doubt" rule), and this court's decision in *Island Creek Coal Co. v. Compton*, 211 F.3d 203 (4th Cir. 2000) (holding that the ALJ must weigh all relevant evidence together, rather than analyzing the evidence separately depending on its type). It argues that had the ALJ applied these new procedures, he would not have awarded benefits to Martin. Second, Armco contends that the ALJ erred in crediting the opinion of a non-board certified doctor and in attributing bias to a doctor based on the identity of the party who presented his opinion. Finally, Armco challenges the ALJ's decision to set January 1, 1989 — the first day of the month when Martin's claim was first made — as the date of onset of his disability. In doing so, the ALJ followed 20 C.F.R. § 725.503(b), which provides that where evidence does not establish the month of onset, "benefits shall be payable to such miner beginning with the month during which the claim was filed." Armco contends that this regulation violates § 7(c) of the Administrative Procedure Act by improperly allocating the burden of proof.

Because Armco did not present these issues to the Board, the decision and order of the Board did not address or decide them. We conclude therefore that Armco has waived these issues for consideration on appeal. *See, e.g.*, *South Carolina v. United States Dep't of Labor*, 795 F.2d 375, 378 (4th Cir. 1986).

IV

For the foregoing reasons, the petition of Armco for review is denied and the decision and order of the Benefits Review Board is affirmed.

*PETITION FOR REVIEW DENIED*

LUTTIG, Circuit Judge, concurring in the judgment:

I concur in the judgment of the court, but not in its opinion. I concur in the judgment because Armco is, and Babcock Mining is not and cannot be, the coal mine operator responsible, by statute and regulation, for payment of Martin's black lung benefits. The court never actually addresses Armco's argument that Babcock Mining is the responsible operator under 20 C.F.R. § 725.493. However, that argument is unavailing because it rests upon a fundamental misreading of the regulation. Section 725.493(b) provides that an employer may establish that a miner was *not* "regularly employed for a cumulative year," through proof that the miner "was *not* employed by [that employer] for a period of at least 125 working days." However, this regulation does not provide the converse, upon which Armco's argument rests — namely, that regular employment for a cumulative year *is* established through proof that the miner *was* employed for a period of at least 125 working days. The mere fact that Martin worked for Babcock Mining for a period of in excess of 125 days, therefore, does not establish that Martin worked for that operator for the required one-year period. Because of this, and because Martin was not otherwise regularly employed by Babcock Mining for a period of one year or for partial periods totaling one year, Babcock Mining is not and cannot be considered the coal mine operator responsible for Martin's black lung benefits.