**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 05-1953**

———————

CONSOLIDATION COAL COMPANY,

Petitioner,

versus

VIOLA M. NECESSARY, widow of Alvin H.
Necessary, deceased; DIRECTOR, OFFICE OF
WORKERS' COMPENSATION PROGRAMS,

Respondents.

———————

On Petition for Review of an Order of the Benefits Review Board.
(05-223-BLA)

———————

Argued: December 5, 2007            Decided: April 7, 2008

———————

Before MICHAEL and GREGORY, Circuit Judges, and John Preston
BAILEY, Chief United States District Judge for the Northern
District of West Virginia, sitting by designation.

———————

Petition denied by unpublished per curiam opinion.

———————

**ARGUED:** Kathy Lynn Snyder, JACKSON & KELLY, P.L.L.C., Morgantown,
West Virginia, for Petitioner. Frederick K. Muth, HENSLEY, MUTH,
GARTON & HAYES, Bluefield, West Virginia; Barry H. Joyner, UNITED
STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondents. **ON
BRIEF:** Douglas A. Smoot, JACKSON & KELLY, P.L.L.C., Morgantown,
West Virginia, for Petitioner. Jonathan L. Snare, Acting Solicitor
of Labor, Patricia M. Nece, Counsel for Appellate Litigation,
UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Federal
Respondent.

————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Consolidation Coal Company (Consol) petitions for review of an order of the Department of Labor's Benefits Review Board (BRB) affirming the decision of an administrative law judge (ALJ) to award survivor's black lung benefits to Viola Necessary (Mrs. Necessary), the widow of Alvin Necessary (Mr. Necessary). Consol argues that the ALJ erred by (1) crediting the opinion of the pathologist who conducted the autopsy and (2) misapplying the Black Lung Benefit Act's evidence-limiting regulations. We affirm because we conclude that (1) the ALJ's benefits determination was supported by substantial evidence in the record and (2) Consol waived its arguments about the application of the regulations by failing to raise them before the BRB.

I.

Mr. Necessary worked as a coal miner for twenty-four years. During his lifetime he submitted three claims under the Black Lung Benefits Act, 30 U.S.C. §§ 901-944 (the Act), each of which was denied. Mr. Necessary died on February 3, 2001, at age eighty. Eduardo T. Tolosa, M.D., Mr. Necessary's treating physician, completed his death certificate, identifying the cause of death as acute bronchopneumonia as a consequence of coal workers' pneumoconiosis and emphysema. Mr. Necessary's widow

3

submitted a timely application for survivor's benefits under the Act.

At the hearing before the ALJ, the parties stipulated that Mr. Necessary suffered from coal workers' pneumoconiosis caused by coal mine employment and that Consol was the responsible coal operator. The parties agreed that the remaining issue was whether coal workers' pneumoconiosis caused or hastened Mr. Necessary's death. During the hearing the ALJ allowed all of the evidence from Mr. Necessary's lifetime black lung claims to be included in the record with no objection from either party. The ALJ then excluded certain documentary evidence offered by Consol, including two of its three reviews of autopsy tissue slides, as exceeding the evidentiary limitations imposed by 20 C.F.R. § 725.414.

After reviewing the evidence, the ALJ determined that Mr. Necessary's death was hastened by his pneumoconiosis and awarded Mrs. Necessary survivor's benefits. In reaching this conclusion the ALJ relied primarily on the opinion of Alex P. Racadag, M.D., the board certified pathologist who conducted an autopsy of Mr. Necessary's lungs. The ALJ also found support in Dr. Tolosa's deposition testimony, introduced into evidence by Consol. The ALJ rejected other evidence offered by Consol, including the opinion of Stephen T. Bush, M.D., who examined the autopsy slides and

4

concluded that pneumoconiosis had not hastened Mr. Necessary's death.

Consol appealed the decision to the BRB, arguing that (1) the evidence-limiting regulations were invalid, or, alternatively, Consol's excluded evidence should have been admitted under the good cause exception in the regulations, 20 C.F.R. § 725.956(b)(1), and (2) the award was not supported because Dr. Racadag's opinion was equivocal and the ALJ automatically credited his opinion because he was the autopsy prosector. The BRB rejected Consol's evidentiary arguments, but it remanded to the ALJ with instructions to provide a more detailed explanation of his decision to credit the opinion of Dr. Racadag. On remand the ALJ issued a new opinion further explaining his rationale for crediting Dr. Racadag, and upon a second appeal the BRB affirmed in a two to one vote. Consol then petitioned to this court for review. The Director of the Office of Workers' Compensation Programs (the Director) and Mrs. Necessary responded.

II.

To qualify for benefits under the Act, Mrs. Necessary must demonstrate that (1) Mr. Necessary suffered from pneumoconiosis, (2) the pneumoconiosis arose from coal mine employment, and (3) the pneumoconiosis was a "substantially contributing cause or factor leading to" his death. 20 C.F.R.

5

§ 718.205; see also Bill Branch Coal Corp. v. Sparks, 213 F.3d 186, 190 (4th Cir. 2000). A "substantially contributing cause" is defined as a condition hastening the miner's death. 20 C.F.R. § 718.205(c)(5). The claimant must prove each of these elements by a preponderance of the evidence. Piney Mountain Coal Co. v. Mays, 176 F.3d 753, 757 (4th Cir. 1999) (citing 5 U.S.C. § 556(d)).

In making factual determinations, "the ALJ must explain which evidence is relevant and why he credited the evidence he did." Perry v. Mynu Coals, Inc., 469 F.3d 360, 363 (4th Cir. 2006) (citing Island Creek Coal Co. v. Compton, 211 F.3d 203, 208-09 (4th Cir. 2000) and Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439 (4th Cir. 1997)). We must uphold the ALJ's factual determinations if they are supported by substantial evidence in the record. Id. Substantial evidence is of "sufficient quality and quantity 'as a reasonable mind might accept as adequate to support' the finding under review." Piney Mountain Coal Co., 176 F.3d at 756 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). We review legal conclusions de novo. Perry, 469 F.3d at 363.

Consol raises two arguments on appeal. First, it argues that the ALJ erred in crediting Dr. Racadag's opinion. Second, Consol contends that the ALJ erred in his application of the Act's evidence-limiting regulations. We discuss these contentions in turn.

III.

A.

Consol first argues that the ALJ erred in crediting Dr. Racadag's opinion because the opinion was unreasoned and equivocal. Consol relies on our decision in United States Steel Mining Co. v. Director, Office of Workers' Compensation Programs, 187 F.3d 384 (4th Cir. 1999). In that case the ALJ awarded survivor's benefits based on a doctor's statement that "'[i]t is possible that death could have occurred as a consequence of [the miner's] pneumonia superimposed upon his . . . pneumoconiosis.'" Id. at 387. In his report the doctor admitted that he did not have any information concerning the circumstances of the miner's death. Id. at 390. We held that, given the "total absence of any medical evidence" linking the miner's pneumoconiosis with his death, the doctor's opinion was pure speculation and could not support the ALJ's award. Id. at 391.

While a doctor's opinion must rely on medical evidence, we also recognize that a doctor is under no obligation to parse words. Medical judgments regarding cause of death will often involve some degree of uncertainty, and it is proper -- and commendable -- for a doctor to be candid about this reality. Thus, in Piney Mountain Coal Co. v. Mays we affirmed an award of benefits despite the doctor's use of the conditional "could" in rendering his opinion. 176 F.3d at 763-64. Like in U.S. Steel we recognized

7

that the doctor's specific statements could not be viewed in isolation, but instead must be understood in the context of the information known to him and in light of his full report. <u>Piney Mountain Coal Co.</u>, 176 F.3d at 763. Similarly, in <u>Perry v. Mynu Coals, Inc.</u> we held that an ALJ erred by summarily dismissing a doctor's opinion because the doctor admitted that he was not "one-hundred percent sure" of his conclusion. 469 F.3d at 365-66. We noted that "refusal to express a diagnosis in categorical terms is candor, not equivocation, and we are of opinion that it enhances rather than undermines [the doctor's] credibility." <u>Id.</u> at 366.

Mrs. Necessary submitted two items of evidence from Dr. Racadag. First, she introduced his autopsy report, which described the autopsy procedure, his observations, and his conclusion that coal worker's pneumoconiosis and other conditions contributed to Mr. Necessary's morbidity and demise. Second, she introduced Dr. Racadag's deposition testimony. Dr. Racadag testified that Mr. Necessary had a "moderate" degree of simple coal workers' pneumoconiosis with micronodules, which contributed to his death. J.A. 197. During Dr. Racadag's deposition the following exchange took place:

> Q: So in this case, when you say the coal workers' pneumoconiosis contributed to his death, I mean, are you speculating that?

> A: Yes. It's a speculation. That's why I said "probably contributed," because I believe there is no 100 percent in medicine. . . . I think it's an interplay of several factors, rather than just one.

8

J.A. 210-11.  Shortly thereafter Dr. Racadag affirmed that he had been providing answers to "a reasonable degree of medical and scientific certainty."  J.A. 212.

The ALJ's decision to credit Dr. Racadag's statements is one that we review under the "substantial evidence" standard. Piney Mountain Coal Co., 176 F.3d at 764.  When we consider the ambiguous statements highlighted by Consol in the context of Dr. Racadag's entire report and testimony, we are not persuaded that "no 'reasonable mind' could have interpreted and credited the doctor's opinion as the ALJ did."  Id.  Instead, as the ALJ found, Dr. Racadag relied on his experience and his gross and microscopic observations of the lungs in reaching his conclusion.

Dr. Racadag weighed the lungs, noting that the right lung weighed 50 grams more than the left.  He noted brown to black coloration with black-gray mottling and black hilar lymph nodes measuring up to one centimeter.  Dr. Racadag also noticed pleural adhesions, meaning that "some areas of the lung surface were plastered against the thoracic wall."  J.A. 194.  In his microscopic examination, he described various "aggregates of black pigmented macrophages some of which [were] associated with fibrocollagenous reaction," coal nodules with obvious fibrosis, emphysematous changes, thickening of tissues, and scattered inflamation.  J.A. 157.  In his deposition testimony Dr. Racadag explained how these observations led him to his conclusions.

9

As the ALJ also noted, Dr. Racadag clarified that he was giving his opinion to a reasonable degree of medical certainty. Like in <u>Perry</u>, where the doctor also refused to state that he was one-hundred percent certain, Dr. Racadag's admission of the uncertainty inherent in medical evaluation could certainly be interpreted as a testament to his candor rather than a lack of conviction, and it was well within the ALJ's discretion to credit his opinion.

B.

Consol also argues that the ALJ "mechanically credited Dr. Racadag's opinion because his role as a prosector allowed him to view the lungs." Pet'r's Br. 18. This challenge is limited to the ALJ's decision to credit Dr. Racadag's opinion that pneumoconiosis affected ten to twenty percent of Mr. Necessary's lungs, rather than Dr. Bush's opinion that pneumoconiosis affected only five percent of the lungs at the time of death. While this is a close case, we affirm the ALJ's decision because his opinion was carefully reasoned and based on evidence in the record.

We have held that an ALJ may not automatically credit the opinions of an autopsy prosector solely because he "was the only physician to examine the whole body near the time of death." <u>Bill Branch Coal Corp.</u>, 213 F.3d at 192. We have counseled caution in this area because automatic crediting of the autopsy prosector in every case would foreclose an opposing party from the opportunity

10

to present its evidence. Our holding in Bill Branch follows the uncontroversial rule that an ALJ's opinion must be reasoned and supported by the record. Id. at 190. In keeping with this rule, we have also recognized that the ALJ may credit the autopsy prosector's opinion when such crediting is supported by the record and adequately explained. See Perry, 469 F.3d at 366; Bill Branch Coal Corp., 213 F.3d at 192 n.6. In a given case, for example, the evidence may allow the ALJ to determine that the autopsy prosector's ability to conduct a gross examination of the miner's lungs places the prosector in a better position to assess the extent to which the lung tissue had been affected by pneumoconiosis.

In this case the ALJ restated the rule in Bill Branch and noted that he was required to resolve the dispute created by Dr. Bush's and Dr. Racadag's conflicting interpretations of the lungs' impairment. The ALJ then determined that Dr. Racadag had a better opportunity to assess the limited issue in the case -- the total extent of pneumoconiosis in the lung -- because he was able to view the gross anatomy of the lung and see the actual effects of the disease, as well as examine the lung tissue microscopically. Dr. Bush, on the other hand, only examined slides comprised of samples taken from the lungs and did not examine the lung as a whole. In reaching his conclusion, the ALJ relied on Dr. Racadag's testimony that the opportunity to conduct a gross examination as well as a

11

microscopic examination better enabled him to understand the extent of the disease.  The ALJ did not rely solely on Dr. Racadag's role as autopsy prosector; he also carefully considered the credibility of Dr. Bush's competing evaluation and concluded that it was insufficiently documented and reasoned.  As the ALJ noted, Dr. Bush failed to explain the scientific basis for his determination that the extent of pneumoconiosis was insufficient to hasten death, but instead seemed to apply "a mechanical standard."  J.A. 372.

The ALJ's decision to credit Dr. Racadag's assessment of the extent of Mr. Necessary's pneumoconiosis over Dr. Bush's assessment was reasoned and supported by the evidence.  The ALJ was required to resolve the dispute created by the contradictory medical opinions, and he evaluated the record to determine which opinion was best supported by the evidence.  Dr. Racadag testified extensively about how his gross examination of the lungs aided him in reaching his conclusions.  In contrast, Dr. Bush made conclusory statements that pneumoconiosis did not hasten Mr. Necessary's death.  While this is a close case, as we have said, we may not replace the ALJ's assessments with our own.

We conclude that the ALJ's decision to credit Dr. Racadag's opinion was supported by the evidence, and his opinion supports the award of survivor's benefits to Mrs. Necessary.

12

IV.

Consol also raises two challenges to the ALJ's evidentiary rulings. For the reasons discussed below, we agree with the Director that Consol has waived these arguments because it failed to raise them before the BRB.

A.

Consol first argues that the ALJ erred by considering evidence from Mr. Necessary's three lifetime claims. Consol relies on a recent BRB decision holding that under 20 C.F.R. § 725.309(d) evidence from the living miner's claims should not be automatically included in the record for a survivor's claim. Keener v. Peerless Eagle Coal Co., BRB No. 05-1008 BLA, 2007 WL 1644032, at *5-*6 (Jan. 26, 2007). When the case was before the BRB, Consol argued that the ALJ erred by failing to consider the miner's lifetime evidence -- an argument opposite to the one it raises today. Consol acknowledges that it did not argue to the BRB that the lifetime claims evidence should have been excluded, but it contends that the Keener decision created new law that should change the outcome in this case. We disagree. Keener did not create new law; instead, it interpreted a regulation that was in existence when the case was before the BRB. See Betty B Coal Co. v. Dir., Office of Workers' Comp. Programs, 194 F.3d 491, 501 (4th Cir. 1999). Consol thus had the opportunity to argue to the BRB that the ALJ erred by considering the lifetime claims evidence. Instead, it choose to

13

advance the opposite argument. Because the argument Consol raises now was not raised before the BRB, and the BRB did not have an opportunity to consider it, we decline to consider it here. See Armco, Inc. v. Martin, 277 F.3d 468, 476 (4th Cir. 2002).

### B.

Consol also contends that the ALJ improperly excluded its autopsy rebuttal evidence under 20 C.F.R. § 725.414(a)(3). Again, Consol relies on recent court decisions in support of its argument. See Elm Grove Coal Co. v. Dir., Office of Workers' Comp. Programs, 480 F.3d 278, 297-99 (4th Cir. 2007); Keener, 2007 WL 1644032, at *2-*4. Again, we conclude that Consol failed to make this argument before the BRB and has therefore waived it.

In its first appeal to the BRB, Consol challenged the ALJ's application of the evidence-limiting regulations with respect to the exclusion of several of its proffered items of evidence. At that time Consol made two related arguments. First, Consol argued that the evidence-limiting regulations were invalid under the Act, the Administrative Procedures Act, and Supreme Court and Fourth Circuit precedent. Second, Consol argued that the evidence was relevant and probative, and thus should be admitted under the good cause exception to the regulations, 20 C.F.R. § 725.456(b)(1). The BRB rejected each of these arguments.

Before this court, Consol puts forth an alternative argument for the first time, contending that the evidence should

14

have been admitted as rebuttal evidence under the evidence-limiting regulations. Consol cites <u>Keener</u>'s holding that, under § 725.414(a)(3), the responsible operator may submit an autopsy slide review as its affirmative evidence and also, in rebuttal, an additional report interpreting the claimant's autopsy report. 2007 WL 1644032, at *2-*4. Consol argues that Dr. Bush's report should have been admitted as its affirmative evidence and that Dr. Oesterling's report, which analyzed Mr. Necessary's medical reports and his autopsy slides, should have been admitted as its rebuttal evidence. Consol concedes that it did not challenge the ALJ's application of § 725.414 before the BRB, but it contends that its two arguments before the BRB somehow encompass its argument on appeal. In essence, Consol argues that because our decision in <u>Elm Grove Coal Co.</u> forecloses Consol's challenges to the validity of the regulations, it is now entitled to advance an alternative argument regarding the application of those regulations.

While Consol did challenge the exclusion of Dr. Oesterling's report (and those of several other doctors) before the BRB, it did so under substantively different arguments than the one it raises before this court. The BRB carefully considered Consol's arguments under several federal statutes and the good cause exception. But the BRB had no opportunity to consider Consol's contention here that the ALJ made a legal error in his application of § 725.414(a)(3). It was Consol's deliberate choice to focus on

15

the validity and breadth of the regulations, rather than raise the alternative argument that the ALJ misapplied the evidence-limiting regulation. As a result, we will not consider the argument that Consol chose not to make before the BRB. See Armco, Inc., 277 F.3d at 476.

* * *

For the foregoing reasons, Consol's petition for review is denied.

PETITION DENIED

16