**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 23-1947**

───────────────

ANITA BALDWIN, on behalf of Eddie D. Baldwin,

        Petitioner,

      v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR; ISLAND CREEK KENTUCKY MINING; ISLAND CREEK COAL COMPANY, c/o Smart Casualty Claims,

        Respondents.

───────────────

On Petition for Review of an Order of the Benefits Review Board.  (BRB-2021-0547)

───────────────

Argued:  January 28, 2026                        Decided:  March 19, 2026

───────────────

Before WILKINSON, Circuit Judge, FLOYD, Senior Circuit Judge, and David J. NOVAK, United States District Judge for the Eastern District of Virginia, sitting by designation.

───────────────

Petition for review granted; order vacated and remanded by published opinion. Judge Novak wrote the opinion, in which Judge Wilkinson and Judge Floyd joined.

───────────────

**ARGUED:**  Barry Cameron Blair, WOLFE WILLIAMS & AUSTIN, Norton, Virginia, for Petitioner.  John R. Sigmond, PENN, STUART & ESKRIDGE, Bristol, Tennessee; Michael P. Doyle, Office of the Solicitor, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondents.  **ON BRIEF:**  Seema Nanda, Solicitor of Labor, Barry H. Joyner, Associate Solicitor, Jennifer Feldman Jones, Deputy Associate

Solicitor, Ann Marie Scarpino, Office of the Solicitor, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Federal Respondent.

---

David J. NOVAK, United States District Judge for the Eastern District of Virginia, sitting by designation:

Coal miners seeking benefits under the Black Lung Benefits Act (the "BLBA" or "the Act"), 30 U.S.C. §§ 901–944, may rely on a rebuttable presumption that their diagnosis of pneumoconiosis, known as black lung disease, resulted from their work in the coal mines by establishing that they were employed for fifteen years or more in underground coal mines. Anita Baldwin ("Petitioner"), the surviving beneficiary of the coal miner whose employment stands at issue in this case,[1] asks us to determine how a year of employment should be calculated under the applicable Department of Labor regulation, § 725.101(a)(32), which defines a "year" for all purposes under the BLBA. In resolving the issue, we agree with Petitioner and join our colleagues in the Sixth Circuit by concluding that a year of employment under the BLBA occurs when a coal miner works 125 days or more in and around a coal mine during a one-year period. We therefore grant the petition for review, vacate the decision of the Benefits Review Board and remand with directions to return Petitioner's case to the Administrative Law Judge to reevaluate Petitioner's claim in light of this opinion.

---

[1] The miner who initially applied for BLBA benefits, Eddie Baldwin, died on January 29, 2021. His wife, Anita Baldwin, was substituted as Claimant in the action pending before the Administrative Law Judge on June 23, 2021.

3

I.

A.

We begin by briefly summarizing the complicated interplay of statutes and regulations that govern the issues in this appeal.

The BLBA exists to provide benefits to coal miners who are totally disabled by coal dust-related pulmonary diseases and their dependents through an adversarial administrative procedure. 30 U.S.C. § 901(a); *Island Creek Coal Co. v. Blankenship*, 123 F.4th 684, 688 (4th Cir. 2024). To obtain benefits under the BLBA, miners must prove by a preponderance of the evidence that (1) they suffer from pneumoconiosis,[2] either in clinical or legal form; (2) the pneumoconiosis arose out of coal mine employment; (3) they are totally disabled by a respiratory or pulmonary impairment; and (4) the pneumoconiosis contributes to the totally disabling impairment. 20 C.F.R. § 725.202(d); *Island Creek Coal*, 123 F.4th at 688.

Because the "existence and causes of pneumonoconiosis are difficult to determine," Congress established certain evidentiary presumptions "to assist miners in proving their claims." *Hobet Mining, LLC v. Epling*, 783 F.3d 498, 501 (4th Cir. 2015) (quoting *Broyles v. Dir., Office of Workers' Comp. Programs,* 824 F.2d 327, 328 (4th Cir. 1987)). One such presumption, 30 U.S.C. § 921(c)(4), "single[s] out" miners with fifteen years of coal mining experience with the goal of "making it easier for them to show their entitlement to benefits." *Id.* (first quoting S. Rep. 92–743 (1972), *reprinted in* 1972 U.S.C.C.A.N. 2305,

---

[2] Congress defines pneumoconiosis, or "black lung disease," as a "chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. § 902(b).

2306; and then quoting Regulations Implementing the Byrd Amendments to the Black Lung Benefits Act:  Determining Coal Miners' and Survivors' Entitlement to Benefits, 78 Fed. Reg. 59102, 59105–07 (Sept. 25, 2013)).[3]  This "fifteen-year presumption" specifies in relevant part:

> [I]f a miner was employed for fifteen years or more in one or more underground coal mines . . . and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis, that his death was due to pneumoconiosis, or that at the time of his death he was totally disabled by pneumoconiosis.

30 U.S.C. § 921(c)(4).  We have held this presumption to establish that "'when a miner proves [fifteen] years of coal mine employment and . . . the total disability element, a rebuttable presumption arises that the miner is totally disabled due to pneumoconiosis,' i.e., that he is entitled to benefits under the Act." *Island Creek Coal*, 123 F.4th at 688 (quoting *Mingo Logan Coal Co. v. Owens*, 724 F.3d 550, 555 (4th Cir. 2013)).  Once the claimant shows sufficient evidence to trigger the presumption, "the burden shifts to the employer to demonstrate that the miner is not in fact eligible for benefits." *W. Virginia CWP Fund v. Dir., Off. of Workers' Comp. Programs,* 880 F.3d 691, 695 (4th Cir. 2018). If an employer cannot rebut the fifteen-year presumption, the claimant must be granted benefits. *Id.*

---

[3] Congress enacted the BLBA's fifteen-year presumption in 1972, eliminated it in 1981 and then revived it in 2010, using "language identical to that employed in the original statute." *W. Virginia CWP Fund v. Bender*, 782 F.3d 129, 134 (4th Cir. 2015).

Critically, Congress did not provide instructions within the BLBA for how a claimant should establish periods of employment, for purposes of the fifteen-year presumption or otherwise. Instead, it directed the Secretary of Labor to "prescribe standards, which may include appropriate presumptions, for determining whether pneumoconiosis arose out of employment in a particular coal mine or mines." 30 U.S.C. § 932(h).

In 1980, the Department of Labor ("DOL") first defined "a year of employment" within two distinct regulations: 20 C.F.R. § 718.301(b) (2000), used to determine what evidence a miner must show to be entitled to certain presumptions, and 20 C.F.R. § 725.493(b) (2000), used to determine responsible operator liability. In 2001, after notice and comment rulemaking, DOL combined these definitions into one unified definition — the regulation at issue here. The regulation reads as follows:

> Year means a period of one calendar year (365 days, or 366 days if one of the days is February 29), or partial periods totaling one year, during which the miner worked in or around a coal mine or mines for at least 125 "working days." A "working day" means any day or part of a day for which a miner received pay for work as a miner, but shall not include any day for which the miner received pay while on an approved absence, such as vacation or sick leave. In determining whether a miner worked for one year, any day for which the miner received pay while on an approved absence, such as vacation or sick leave, may be counted as part of the calendar year and as partial periods totaling one year.

20 C.F.R. § 725.101(a)(32).

DOL appended several subsections to this regulatory definition. Relevant here, subsection (i) provides in part that "[i]f the evidence establishes that the miner worked in or around coal mines at least 125 working days during a calendar year or partial periods

6

totaling one year, then the miner has worked one year in coal mine employment for all purposes under the Act." *Id.* § 725.101(a)(32)(i). Subsection (ii) provides guidance to factfinders on how to calculate a miner's work history and establishes a presumption that a miner who demonstrates employment that spans a year-long period has worked 125 working days during that year "in the absence of evidence to the contrary." *Id.* § 725.101(a)(32)(ii). And subsection (iii) supplies a discretionary formula that a factfinder may use to calculate a miner's work history in cases where a miner's dates of employment remain uncertain or where his employment lasted less than a year-long period. *Id.* § 725.101(a)(32)(iii).

Although the regulation never mentions a 365-day employment relationship requirement, the Administrative Law Judge (the "ALJ") [4] and the Benefits Review Board (the "Board") both interpreted § 725.101(a)(32) and its subsections to require that the miner show a 365-day employment relationship with his employer during each year for which Petitioner seeks credit towards the BLBA's fifteen-year presumption. Petitioner disagrees, asserting that she only needs to show that the miner worked 125 working days during a one-year time period to earn a year's credit towards the presumption. The central issue

---

[4] In his January 23, 2021 Order denying Baldwin's claims, the ALJ solely referenced DOL regulation 20 C.F.R. § 718.305, which serves as the regulatory counterpart to 30 U.S.C. § 921(c)(4) and sets forth the same fifteen-year presumption as the BLBA. *See Spring Creek Coal Co. v. McLean o/b/o McLean*, 881 F.3d 1211, 1218 (10th Cir. 2018) (describing § 718.305 as providing "further guidance on the implementation" of the BLBA's fifteen-year presumption).

before us becomes whether § 725.101(a)(32) imposes the 365-day employment threshold requirement.

B.

Eddie Baldwin ("Baldwin") worked in Virginia coal mines for Island Creek Kentucky Mining ("Island Creek") from May 1976 to December 31, 1991. Baldwin worked in the mines in a variety of roles. As a new hire, he was required to crawl to the end of a 500-foot block of coal to drill holes into that block and "shoot coal down while [a] plow was running." J.A. 116.[5] In performing these tasks, he "could just hardly see my hand in front of my face with my headlight going at times." *Id*. Later in his career, his work involved hauling motors and supplies, working on the belt line, hanging cables and water lines and handling 50-pound bags of rock dust, cinder blocks and timber, among other materials.

In July 2018, Baldwin filed a claim for black lung benefits under the BLBA. The District Director overseeing Baldwin's claim issued a Proposed Decision and Order awarding him benefits in February 2020. In the Proposed Order, the District Director found that Baldwin had been employed for 15.39 years, based on the relevant Social Security Earnings Record, and therefore that he qualified for the BLBA's fifteen-year presumption of total disability due to pneumonoconiosis. Paired with his demonstration of a totally disabling respiratory impairment, the District Director found that Baldwin had successfully established his entitlement to benefits.

---

[5] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

8

In response, Island Creek, Baldwin's employer for the duration of his mining career, timely requested a formal hearing in front of an ALJ. The District Director then referred the claim to the Office of Administrative Law Judges.

The ALJ conducted a hearing on November 17, 2020. Baldwin testified that his job involved consistent exposure to coal, and he described how he ended every shift with coal "just plumb black around my eyes and up my nostrils and just in my throat [ . . . ] [j]ust everywhere." *Id.* 120. He started noticing breathing difficulties around 1996 or 1997, which worsened as time went on. Baldwin was also questioned about several periods throughout his years of employment with Island Creek during which he had been laid off. The ALJ concluded the hearing by announcing that he would bifurcate the benefits determination as to (1) whether Baldwin had established sufficient years of employment to qualify for the BLBA's fifteen-year presumption and (2) the merits of Baldwin's benefits claim, and ordered the parties to brief their positions on the first issue.

The ALJ ultimately concluded that Baldwin had been continuously employed for eleven full years (1977-81 and 1986-91), and five partial years during which he had been laid off at various times. Critically, the ALJ improperly focused on Baldwin's partial periods of "underground coal mine employment," finding that Baldwin was employed for 236 days during 1976, 273 days during 1982, 132 days during 1983, 245 days in 1984, and 260 days in 1985. *Id*. 71, 91–96. Instead of considering the number of working days that Baldwin had accrued during these partial years of employment, the ALJ only credited Baldwin with percentages of a full 365-day period of employment, relative to the amount of days that Baldwin had been employed per partial year of employment. This ultimately

9

led to the ALJ's conclusion that Baldwin had only been employed for 14.14 years and thus did not satisfy the threshold showing of fifteen cumulative years of employment. Consequently, the ALJ did not apply the BLBA's presumption. Upon his later consideration of the merits of Baldwin's claim on June 23, 2021, the ALJ ultimately denied benefits to Petitioner, finding that Baldwin had failed to establish the required element of total disability causation.

Petitioner appealed the ALJ's decision to the Board. In her appeal, Petitioner urged the Board to adopt the Sixth Circuit's approach to calculating a "year" of coal mine employment under § 725.101(a)(32) as articulated in *Shepherd v. Incoal, Inc.,* 915 F.3d 392 (6th Cir. 2019). There, the Sixth Circuit held that if a miner established that he worked at least 125 days for a coal mine operator within a one-year period, the factfinder may presume that the miner was employed for a full year for purposes of the BLBA's fifteen-year presumption, without the miner needing to show a 365-day employment relationship. *Shepherd*, 915 F.3d at 395.

In its July 14, 2023 Decision and Order, the Board affirmed the ALJ's decision, with one member dissenting. The majority reiterated that the Board "has long interpreted Fourth Circuit case law as supporting the position [that] the ALJ must first determine whether the miner was engaged in an employment relationship for a period of one calendar year [. . . and once] the threshold one-year period is met, the ALJ must then determine whether the miner worked for at least 125 working days within that one-year period." J.A. 15. Relying on two of our cases dealing with § 725.101(a)(32)'s predecessor regulations, *Daniels v. Mitchell,* 479 F.3d 321 (4th Cir. 2007), and *Armco Inc. v Martin*, 277 F.3d 468 (4th Cir.

10

2002), the Board found that a showing of 125 working days within a calendar year or partial periods totaling the same, standing alone, "does not establish one full year of coal mine employment as defined in the regulations," and that the miner must also show a 365-day employment relationship before qualifying for a year of credit towards the BLBA's fifteen-year presumption. *Id.* 16. The majority rejected Petitioner's arguments regarding *Shepherd*, highlighting that "[t]his case arises in the Fourth Circuit, which has not adopted *Shepherd* or otherwise held that 125 days of earnings establishes a year-long employment relationship" without more. *Id.* 15. The majority ultimately affirmed the denial of benefits, finding that the ALJ did not err in his conclusion that Baldwin did not qualify for the BLBA's fifteen-year presumption because Baldwin had less than fifteen cumulative years of coal mine employment, nor did he err in the methods of calculation that he used to reach that conclusion.

The dissenting judge disagreed with the majority's assessment of the ALJ's approach and outcome, noting that "the ALJ's analysis reflects a common, yet mistaken view that a miner cannot be credited with one year of coal mine employment unless he first establishes a 365-day employment relationship with one or more operators during a calendar year." *Id.* 18. The judge discounted the binding power of *Armco* and *Daniels*, because they interpreted a now-defunct regulation. In his view, their holdings did not preclude the conclusion that a showing of 125 working days, standing alone, was sufficient to establish one year of employment under the current regulation. He found persuasive the Sixth Circuit's holding in *Shepherd* — "the only federal court to squarely address whether a finding of 125 working days under the revised regulations establishes one year of coal

11

mine employment" — and asserted that the ALJ's findings ignored "the regulations' clear instruction." *Id.* 19, 21.

Petitioner's timely petition for review followed. The parties' sole dispute revolves around whether the ALJ properly determined that Baldwin did not accumulate fifteen years of underground coal mine employment and thus failed to qualify for the BLBA's fifteen-year presumption. To resolve that dispute, we must determine the proper interpretation of the applicable DOL regulation, § 725.101(a)(32), an issue that this Court has not previously addressed,[6] and determine what showing a miner must make to be credited with a full year of coal mining employment for purposes of the BLBA's fifteen-year presumption.

## II.

We have jurisdiction over this petition under 33 U.S.C. § 921(c). In black lung cases, our review is limited to assessing "whether substantial evidence supports the factual findings of the ALJ and whether the legal conclusions of the [Board] and ALJ are rational and consistent with applicable law." *Harman Min. Co. v. Dir., Off. of Workers' Comp. Programs*, 678 F.3d 305, 310 (4th Cir. 2012) (citing *Lewis Coal Co. v. Dir., Off. of Workers' Comp. Programs,* 373 F.3d 570, 575 (4th Cir. 2004)). The ALJ, as the trier of fact, renders factual and credibility determinations, and we "therefore defer to the ALJ's evaluation of the proper weight" of any conflicting evidence. *W. Virginia CWP Fund,* 880 F.3d at 697. However, we review de novo the legal conclusions of the Board and the ALJ,

---

[6] In *Armco* and *Daniels*, we mentioned, but did not substantively address, § 725.101(a)(32); instead, both opinions analyzed a "year of employment" as defined by two predecessor regulations, 20 C.F.R. § 718.301(b)(2000) and 20 C.F.R. § 725.493(b)(2000), which § 725.101(a)(32) superseded.

12

including on "issues of regulatory construction." *Romero v. Barr*, 937 F.3d 282, 290 (4th Cir. 2019); *Milburn Colliery Co. v. Hicks*, 138 F.3d 524, 528 (4th Cir. 1998).

## III.

## A.

This petition turns on one central question of regulatory interpretation:  how to calculate a year of coal mine employment under 20 C.F.R. § 725.101(a)(32).   That question, in turn, boils down to a decision between two competing approaches:  whether the regulation requires a miner to make two showings — a year-long employment relationship *and* 125 working days in a coal mine during that year-long relationship — or merely to show that he worked 125 days in a coal mine during a one-year time period. Petitioner argues that the plain language of the regulation mandates only the latter showing, which would allow Baldwin to establish the requisite amount of coal mine employment to qualify for the BLBA's fifteen-year presumption even without fifteen years of consistent employment with Island Creek.   Island Creek and the Director, Office of Workers' Compensation Programs ("DOWCP") (collectively, "Respondents") counter that the regulation's plain language requires both showings:  a year-long employment relationship with a coal mine operator and, after having established that threshold showing, 125 days working in the mines during that year of employment.   In the alternative, Respondents argue that if the Court finds the regulation to be ambiguous, it should defer to DOWCP's

13

interpretation of the regulation under the standard laid out in *Kisor v. Wilkie,* 588 U.S. 558 (2019).[7]

We join our colleagues in the Sixth Circuit in holding that the plain language of § 725.101(a)(32) requires a miner to show only that he worked 125 working days in a coal mine within a calendar year (or partial periods totaling one year) to establish a year of employment for purposes of the BLBA's fifteen-year presumption. This reading of the regulation's text comports with the BLBA's expressly remedial purpose and the evolution of the regulation over time. Further, since the regulation's text is unambiguous, we need not defer to DOWCP's contrary interpretation.

1.

We begin our analysis of the regulation, as we must, by considering its plain language. *Mohamed v. Bank of Am. N.A.,* 93 F.4th 205, 210 (4th Cir. 2024). The regulation's definition of a "year" reads as follows:

---

[7] In *Kisor*, the Supreme Court indicated that courts could afford "substantial deference to an agency's interpretation of its own regulation" under *Auer v. Robbins*, 519 U.S. 452, 461 (1997), but only if the regulation at issue is ambiguous. *Id.* at 576. A regulation may only be deemed "genuinely" ambiguous if there is uncertainty about a "single right answer" "even after a court has resorted to all the standard tools of interpretation," including analyzing a regulation's text, structure, history and purpose, without reference to an agency's interpretation of its own regulation. *Id.* Thus, the first step of the *Kisor* inquiry requires a court to carefully consider the text, structure, history and purpose of the regulation "in all the ways it would if it had no agency to fall back on." *Id.* at 575 (quoting *Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 702 (1991) (Scalia J., dissenting)). If the court finds that the regulation is unambiguous, it need not proceed to the second step of the *Kisor* analysis, which allows the Court to defer to an agency's interpretation if it finds that interpretation to be authoritative, implicating the agency's substantive expertise and reflecting fair and considered judgment. *Id*. at 577.

14

> Year means a period of one calendar year (365 days, or 366 days if one of the days is February 29), or partial periods totaling one year, during which the miner worked in or around a coal mine or mines for at least 125 "working days." A "working day" means any day or part of a day for which a miner received pay for work as a miner, but shall not include any day for which the miner received pay while on an approved absence, such as vacation or sick leave. In determining whether a miner worked for one year, any day for which the miner received pay while on an approved absence, such as vacation or sick leave, may be counted as part of the calendar year and as partial periods totaling one year.

§ 725.101(a)(32). On its face, this definition consists of two elements: (1) a calendar year, or partial periods totaling one year, and (2) a minimum of 125 days spent working in or around coal mines during that one-year period. Notably, the definition (and its related subsections, as described below) contains no mention whatsoever of any required employment relationship, let alone one lasting 365 days. Instead, the regulation ties its only mention of employment to a showing of 125 days working "in or around a coal mine." The plain text of the regulation thus lends itself most naturally to a reading that a miner must show that he worked 125 days in a coal mine within the proscribed period (a calendar year or partial periods adding up to the same) — and nothing more — to establish a year of employment for BLBA purposes.

Despite the fact that § 725.101(a)(32)'s text never mentions a 365-day employment relationship, Respondents assert that the regulation's plain text requires a miner to show both "a full calendar year of employment — which may include both working days and non-working days — and 125 working days within that year of employment." DOWCP Brief at 16. Respondents do not point to any provision within the text to support their

15

argument, relying instead on purported "implications" of certain textual phrases within the regulation's first paragraph.

We remain unpersuaded by Respondents' interpretation of § 725.101(a)(32) for several reasons. First, and fatally, Respondents never explain where § 725.101(a)(32)'s definition of a "year" imposes a threshold requirement that a miner must show a 365-day *employment relationship* to establish a year of employment — they simply conclude that it does. We decline to read a substantive requirement into a regulation that does not appear anywhere within the plain text of the applicable regulation or the BLBA itself.

Respondents' arguments based on the "implications" of various phrases within § 725.101(a)(32) also fail to persuade us. Respondents begin by asserting that the regulation's clarification that leap years involve 366 days, rather than 365, constitutes a "textual clue" that a miner must demonstrate a year-long employment relationship, because "[i]f a year of coal mine employment could be established upon a mere showing of 125 working days, it is difficult to see why it would matter whether any given year was a regular year or a leap year." DOWCP Brief at 16, n.12. This argument rings hollow. The regulation's reference to a calendar year plainly serves to define the scope of the temporal unit within which 125 working days can be established, and its acknowledgment that a calendar year consists of 366 days during a leap year, rather than 365, simply reinforces the traditional understanding of a calendar year. We fail to see any hidden textual "clue" that contributes to a different conclusion.

Respondents also highlight the regulation's third sentence, which allows certain non-working days, such as vacation days, to "be counted as part of the calendar year and

16

as partial periods totaling one year" when determining whether a miner worked for a year. § 725.101(a)(32); DOWCP Brief at 16. They argue that this sentence "implies that a determination must be made as to whether the miner was in fact employed for a full calendar year." DOWCP Brief at 16. However, the fact that non-working days may be considered part of the "calendar year" does not somehow impose a requirement that the miner must demonstrate an *employment relationship* spanning that year. If anything, this sentence undermines Respondents' interpretation by clarifying that non-working days within the larger calendar year do not negate the presumption that a miner has worked for one year, as long as that miner can demonstrate that he worked 125 days within the requisite time period.

Finally, Respondents point to the regulation's reference to "partial periods totaling one year," arguing that the inclusion of this phrase makes "no sense" unless "the 'year' described in the opening paragraph of § 725.101(a)(32) refers to an employment relationship lasting a calendar year." Island Creek Brief at 12, n.10. Yet, Respondents again fail to ground their argument in the text of the regulation. The regulation does not specify "partial periods of *employment* totaling one year *of employment*," nor does it require that the miner prove continuous employment throughout these "partial periods." Rather, the regulation's reference to "partial periods totaling one year" merely functions to expand the scope of the temporal unit beyond a calendar year within which 125 working days can be established. For instance, a miner may show 125 working days within one calendar year, stretching from January 1 to December 31 of the same year. A miner may also show 125 working days within partial periods of two consecutive calendar years,

17

amounting to one full year — *e.g.*, 125 working days between May 1 of one year and April 30 of the next year. Such a reading accords with the BLBA presumption's remedial purpose, which seeks to simplify (rather than restrict) miners' access to BLBA benefits, *see infra* Section III.A.2, and avoids reading into the regulation a threshold 365-day employment requirement that the text does not express.

We turn next to the definition's context within the broader regulatory provision, which further supports our conclusion that a miner may establish a year of coal mine employment upon a showing of 125 working days within a one-year period. "When interpreting a regulation, we do not read its language in isolation. Rather the words must be read in their context and with a view to their place in the overall regulatory scheme." *United States v. Boler*, 115 F.4th 316, 325 (4th Cir. 2024) (cleaned up). Further, we abide by the principle of regulatory interpretation that "constructions which render regulatory provisions superfluous are to be avoided." *Black & Decker Corp. v. Comm'r*, 986 F.2d 60, 65 (4th Cir. 1993) (quoting *Hart v. McLucas,* 535 F.2d 516, 519 (9th Cir. 1976)).

We start with the regulation's subsections. Section 725.101(a)(32)(i) reads:

> If the evidence establishes that the miner worked in or around coal mines at least 125 working days during a calendar year or partial periods totaling one year, then the miner has worked one year in coal mine employment for all purposes under the Act. If a miner worked fewer than 125 working days in a year, he or she has worked a fractional year based on the ratio of the actual number of days worked to 125. Proof that the miner worked more than 125 working days in a calendar year or partial periods totaling a year, does not establish more than one year.

§ 725.101(a)(32)(i). Significantly, this subsection unambiguously establishes that a miner who has worked 125 working days within the span of a calendar year or partial periods

18

totaling one year "has worked one year in coal mine employment for all purposes under the Act." § 725.101(a)(32)(i). Subsection (i) does not make any reference whatsoever to a 365-day employment relationship. By contrast, the subsection repeatedly focuses upon 125 working days, underscoring this figure as the touchstone of the inquiry that determines whether a miner has "worked one year in coal mine employment." This becomes especially clear in the subsection's definition of a fractional year relative to 125 working days, rather than 365 days of a formalized employment relationship — if the regulation did in fact require a 365-day employment relationship, the proper divisor for fractional years of employment would necessarily be 365, not 125. The text of subsection (i) thus serves to strongly reinforce the unambiguous language in § 725.101(a)(32) that a miner need only establish 125 working days within a one-year period to claim a year of employment.

Respondents assert that this provision supports their position, because holding otherwise would render subsection (i)'s language specifying that these 125 working days must occur *during a calendar year* or comparable partial periods superfluous. DOWCP Brief at 17. Respondents' argument lacks merit. Section 725.101(a)(32)(i)'s requirement that 125 working days must occur "during a calendar year or partial periods totaling one year" simply functions to preclude a miner from tallying up 125 working days across multiple calendar years to qualify for the presumption. Instead, this provision requires a miner to show that he worked 125 days in a coal mine within a discrete 365 or 366-day period corresponding to a calendar year or partial periods of two calendar years.

Next, subsection (ii) provides:

19

> To the extent the evidence permits, the beginning and ending dates of all periods of coal mine employment must be ascertained. The dates and length of employment may be established by any credible evidence including (but not limited to) company records, pension records, earnings statements, coworker affidavits, and sworn testimony. If the evidence establishes that the miner's employment lasted for a calendar year or partial periods totaling a 365-day period amounting to one year, it must be presumed, in the absence of evidence to the contrary, that the miner spent at least 125 working days in such employment.

§ 725.101(a)(32)(ii). Aside from designating appropriate types of evidence for use in calculating a miner's length of employment, this provision establishes an important rebuttable presumption that any miner whose employment "lasted for a calendar year or partial periods totaling a 365-day period amounting to one year . . . spent at least 125 working days in such employment." *Id.* This presumption affords miners an additional path to establishing 125 working days — and thus a year of employment for purposes of the BLBA — even where evidence of actual days spent working in the mines may be difficult or impossible to procure.

Subsection (ii)'s presumption corroborates our reading of § 725.101(a)(32), while directly undermining Respondents' proposed two-step inquiry. As with subsection (i), this provision again underscores the centrality of the 125-day showing by providing miners with an additional means to meet that threshold. Further, under Respondents' reading of § 725.101(a)(32), subsection (ii) would render the definition's express 125-working-day requirement mere surplusage. If Respondents were correct that miners must initially show a 365-day employment relationship to demonstrate a year of employment, every eligible miner would also necessarily qualify for subsection (ii)'s presumption that they have worked 125 days within that employment period, obviating any need for the 125-working-

20

day requirement in the first place. This interpretation would render a key definitional provision inoperative and effectively read it out of the regulation entirely, contravening the clear thrust of the regulation, which organizes a year of employment around a showing of 125 working days. In light of the regulatory scheme's repeated insistence that a miner must independently show 125 working days within a calendar year, and mindful of our duty, where possible, to read a regulatory scheme so that none of its provisions are rendered useless or redundant, we therefore find subsection (ii)'s presumption to further militate against Respondents' reading of the regulation.

Finally, subsection (iii) proposes a formula for adjudicating officers to use "to establish the length of the miner's work history" when the evidence cannot establish the "beginning and ending dates" of the miner's coal mine employment or when "the miner's employment lasted less than a calendar year," instructing them to "divide the miner's yearly income from work as a miner by the coal mine industry's average daily earnings for that year, as reported by the Bureau of Labor Statistics (BLS)." § 725.101(a)(32)(iii). This provision expressly predicates the application of its formula on a situation in which a miner has "less than a calendar year" of employment — directly contravening Respondents' view that the regulation always requires a full year of employment to establish eligibility and that a miner lacking such a full year of employment remains categorically ineligible. Despite conceding this incongruence between the regulatory text and its preferred interpretation, Island Creek nonetheless protests that "at no point does [subsection] (iii) state that a 'year' can be proven absent a 365-day employment relationship." Island Creek Brief at 21. True — but Island Creek fails to explain why such a statement would be

21

necessary in a regulatory scheme that never affirmatively articulates a 365-day employment requirement in the first place. Nor does Island Creek explain how we should reconcile its reading with subsection (iii)'s express contemplation of miners demonstrating a year of employment when their employment relationship with a coal mine operator lasts less than a year, a scenario wholly consonant with Petitioner's reading of the regulation.

Beyond the regulation's text, Respondents argue that we must give weight to DOL's preamble to § 725.101(a)(32), which suggests that "in order to have one year of coal mine employment, the regulation contemplates an employment relationship totaling 365 days, within which 125 days were spent working and being exposed to coal mine dust, as opposed to being on vacation or sick leave." DOWCP Brief at 17–18 (quoting *Preamble to Final Rule, Regulations Implementing the Federal Coal Mine Safety and Health Act of 1969, as Amended*, 65 Fed. Reg. 79,920, 79, 959 (Dec. 20, 2000)). We disagree. We have previously held that, "to the extent there is a conflict between the preamble and the regulation, the regulation must control because a preamble cannot be read to require more than the regulation requires." *Mejia-Velasquez v. Garland*, 26 F.4th 193, 202 (4th Cir. 2022); *see also Peabody Twentymile Mining, LLC v. Sec'y of Lab.*, 931 F.3d 992, 998 (10th Cir. 2019) ("[W]hile the preamble can inform the interpretation of the regulation, it is not binding and cannot be read to conflict with the language of the regulation itself."). Here, the plain language of § 725.101(a)(32) requires only a showing of 125 working days within a one-year period, and the regulation never states or implies that a miner must demonstrate a 365-day employment relationship in order to establish a year of employment. The preamble, by contrast, appears to suggest a significantly more onerous barrier to eligibility

22

for the BLBA's fifteen-year presumption, "requir[ing] more than the regulation requires." *Mejia-Velasquez*, 26 F.4th at 202. As such, under our precedent, we must adhere to the plain language of the regulation itself and disregard Respondents' arguments on the basis of the conflicting preamble.

Looking beyond the regulation, Respondents argue that their preferred reading of § 725.101(a)(32) constitutes the "only interpretation that gives effect to the text of 30 U.S.C. § 921(c)(4), which places the burden on a claimant to prove 15 *years* of coal mine employment to invoke the rebuttable [fifteen-year] presumption." Island Creek Brief at 14 (emphasis in original). The Court again notes that, much like the regulation, the BLBA never mandates that a miner must show a 365-day employment relationship to qualify for the fifteen-year presumption; instead, the Act only requires that an eligible miner must have been "employed for fifteen years or more," while leaving the specifics of that employment unaddressed. 30 U.S.C. § 921(c)(4). Meanwhile, as we have reiterated, DOL's definition of a "year" unambiguously specifies that, to establish a year of coal mine employment "for all purposes under the Act," a miner need only show that he has "worked in or around coal mines at least 125 working days during a calendar year or partial periods totaling one year." 20 C.F.R. § 725.101(a)(32)(i) (emphasis added). Respondents' argument on the basis of the BLBA's statutory text thus fails to move the needle.

Based on the regulatory text and context, and for all of the above reasons, we hold that § 725.101(a)(32) unambiguously allows a miner to receive credit for a year of coal mine employment if he shows that he has worked at least 125 working days within a

23

calendar year (or partial periods totaling one year) in or around a coal mine.[8]  The

regulation does not require miners to also establish a 365-day employment relationship

with a mine operator.

2.

While the plain text of the regulation commands our holding, the BLBA's remedial

purpose provides further support.  The "principal purpose" of the BLBA is to "compensate

the miners" and their surviving dependents "whose lives and health have been sacrificed

in the production of [a] critical energy source — coal."  1 S. Rep. No. 92–743 (1972), *as

reprinted in* 1972 U.S.C.C.A.N. 2305, 2305.  In crafting the BLBA's fifteen-year

presumption, Congress noted that it intended to "relax the often insurmountable burden of

proving eligibility" for coal miners by providing "the benefit of the doubt to claimants."

*Id.* at 2306, 2315.  This Court has long been "[m]indful of Congress's expressed intent that

entitlement to black lung benefits not be unduly circumscribed."  *Gulf & W. Indus. v. Ling*,

176 F.3d 226, 232 (4th Cir. 1999) (citing *Doris Coal Co. v. Dir., Off. of Workers' Comp.

Programs,* 938 F.2d 492 (4th Cir. 1991).  Accordingly, we have expressly recognized that

the BLBA's "presumptions . . . favor the granting of benefits" and have noted that

---

[8] Since we find § 725.101(a)(32)'s definition of a year unambiguous, we afford no deference to DOL's interpretation of the regulation.  *See Kisor*, 588 U.S. at 574–75 ("[I]f the law gives an answer — if there is only one reasonable construction of a regulation — then a court has no business deferring to any other reading, no matter how much the agency insists it would make more sense.").

"Congress designed the presumptions to ensure that difficulties in proving pneumoconiosis by medical evidence not prevent deserving miners from receiving benefits." *Charles v. Gale Coal Co.*, 813 F.2d 400 (4th Cir. 1987) (per curiam). Our reading of § 725.101(a)(32)'s definition of "year," which serves to reduce, rather than increase, the evidentiary burden on coal miners seeking BLBA benefits, thus comports with our longstanding recognition of Congress's intent to help coal miners and grant them the compensation they deserve for years of strenuous and dangerous physical labor.

Moreover, common sense dictates, as does the regulation and the remedial thrust of the BLBA, that the focus should be on the time period during which a miner is exposed to coal dust, as opposed to the length of time that he collects a paycheck. Black lung disease results from the consistent ingestion of coal dust, not the time period during which an employer lists a miner on their employment records. The regulation recognizes that reality by centering the number of days that a miner actually works in or around coal mines, thereby risking his health to procure this critical energy source.

Respondents' interpretation of § 725.101(a)(32) not only flies in the face of that remedial intent and common sense — it creates a host of perverse incentives for employers, which run contrary to the BLBA's remedial purpose and serve to hinder access to BLBA benefits for coal miners suffering from black lung disease. Under Respondents' view, if a miner's employment relationship with an operator fell even one day short of a full year, that miner could not establish a year of employment for purposes of the BLBA's presumptions, regardless of how many days he toiled in the mines. By strategically laying off miners before the conclusion of a full year of employment and then rehiring them mere

25

days later, coal mine operators could avoid any obligation to pay those miners benefits under the BLBA once their health deteriorates.[9]  Such a result would run counter to the Act's express aim to increase access to benefits for deserving miners and their survivors. We decline to erect such an arbitrary procedural barrier that would prohibit otherwise eligible miners from receiving the benefits of an evidentiary presumption, especially where that barrier has no grounds in the regulatory text.

3.

Section § 725.101(a)(32)'s history further reinforces that miners need only establish 125 working days within a calendar year (or partial periods amounting to the same) to establish a year of employment for purposes of the BLBA.  As referenced above, in 1980, DOL first defined a year of employment for use in the BLBA's various presumptions, specifically contemplating that "a *year of employment* means a period of one year, or partial periods totalling [sic] one year, during which the miner was regularly employed in or around a coal mine by the operator or other employer."  20 C.F.R. § 718.301(b)(2000) (emphasis added).  The regulation defined "regular employment" as a "period of at least 125 working days during a year."  *Id.*  Simultaneously, DOL promulgated a separate definition of a year of employment for use in determining responsible operator liability, employing identical language to § 718.301(b) in its definition of the terms "a year of employment" and "regular employment."  20 C.F.R. § 725.493(b)(2000).  Both provisions

---

[9] We note that there is no evidence that Island Creek engaged in, nor advocates for, such conduct in the immediate case.

explicitly defined a "year of employment" as a period of one year or partial periods totaling one year during which the miner was regularly employed "by [an] operator or other employer," and defined such "regular employment" as working at least 125 days in a given year.

In 2001, DOL promulgated the regulation at issue here, § 725.101(a)(32), which defines a "year" for all purposes under the BLBA and supersedes both predecessor regulations. The current regulation no longer defines a "year of employment," nor does it condition eligibility for the BLBA's presumptions on proof that a miner was "regularly employed" throughout a full calendar year. The current regulation also contains no mention of a required employment relationship, in contrast to its predecessor regulations, which required a miner to demonstrate "regular employment" by a coal mine "operator or other employer."

We find this shift in formulation significant. By replacing the initial reference to a "year of employment" with merely a "year," DOL removed any express or implied suggestion that a showing of an *employment relationship* of any particular duration was required, let alone that it needed to last for a full year. Instead, the regulation re-centers the inquiry on whether a miner worked 125 working days, with the only caveat that these 125 days fall within the span of a one-year period. Relatedly, where the predecessor regulations required a miner to show that a coal mine "operator or other employer" had "regular[ly] employ[ed]" him, the new regulation focuses only on a miner's showing of 125 working days within a year-long period, without reference to any specific employment relationship with any particular employer. These changes underscore Congress's

27

animating impulse to simplify, rather than increase, the burden on coal miners in establishing eligibility for BLBA benefits and further support our reading of the regulation's plain text, which focuses on the actual number of days that a miner suffered exposure to dangerous coal dust in coal mines, rather than an ongoing, year-long employment relationship.

4.

Respondents assert that our prior opinions in *Armco Inc. v Martin*, 277 F.3d 468 (4th Cir. 2002) and *Daniels v. Mitchell,* 479 F.3d 321 (4th Cir. 2007) preclude our construction of § 725.101(a)(32). The Board cited both cases in support of its finding that § 725.101(a)(32) required Petitioner to establish a 365-day employment relationship with a coal mine operator. J.A. 15. Because *Armco* and *Daniels* dealt only with § 725.101(a)(32)'s predecessor regulations, which defined a different term than the one at issue here and which have been superseded by the regulation before us, we do not consider our holdings in these opinions binding as to the meaning of a "year" under § 725.101(a)(32).

In *Armco,* we faced a challenge to the Board's affirmance of a determination regarding coal mine operator liability for a miner's black lung benefits based on the length of the miner's employment with various operators. That challenge centered on the term "year of employment" as defined by DOL's predecessor regulations. *See Armco*, 277 F.3d at 473 (analyzing the "one-year-of-employment requirement" in 20 C.F.R. § 725.493(b)). We determined that the specific language of both predecessor regulations required the factfinder to engage in a two-step inquiry and determine: (1) whether a miner "worked for

28

an operator" for one calendar year or partial periods totaling one year, and (2) whether a miner's employment during that one year was "regular," *i.e.*, whether the miner worked a minimum of 125 working days. *Armco,* 277 F.3d at 474.[10]  In so holding, we noted, in dicta, that § 725.101(a)(32), which had only recently been promulgated, did "not bind our interpretation" of the earlier regulations, but clarified what we held to be DOL's "intent to hold operators liable for the payment of benefits only if they had regularly employed the miner for a full calendar year." *Id.* at 475.

In *Daniels,* we faced a similar appeal concerning coal mine operator liability for BLBA benefits. *Daniels,* 497 F.3d at 323.  We affirmed that, under the predecessor regulations discussed in *Armco*, a miner must show that "the employer employed the miner for one calendar year during which the miner regularly worked in or around a coal mine," and cited *Armco*'s dicta discussing the new regulation's purported support for a two-step inquiry. *Daniels,* 497 F.3d at 334 (emphasis omitted).  However, we explicitly noted that § 725.101(a)(32), the revised regulation at issue in the instant case, "was inapplicable" to

---

[10] At the time that we decided *Armco,* a circuit split existed regarding the proper manner to determine a miner's employment under §725.101(a)(32)'s predecessor regulations. *See Armco*, 277 F.3d at 475 (discussing circuit split).  Notably, the Seventh and Eighth Circuit held that, even under the predecessor regulations, miners needed only to show 125 working days to receive credit for a full year of employment for BLBA purposes, rather than a year-long continuous employment relationship. *See Landes v. OWCP,* 997 F.2d 1192, 1195 (7th Cir. 1993) (equating a miner's working for 125 days to "one year of work"); *Yauk v. Director, OWCP,* 912 F.2d 192, 195 (8th Cir. 1989) (holding that, for purposes of 20 C.F.R. § 718.301(b), if a miner worked for 125 days, "the miner will be credited with one year of coal mine employment").

29

the facts of *Daniels*.  *Id.* at 334.  We also highlighted that "[b]y its terms . . . [725.101(a)(32)(iii)] may be used in situations where the miner's employment lasted less than one year."  *Id.* at 335.

In arguing that *Armco* and *Daniels* require us to read a year-long employment relationship requirement into the revised regulation, Respondents emphasize the Board's reliance on *Armco* and *Daniels* in "interpret[ing] Fourth Circuit case law" to establish a categorical rule that the "ALJ must first determine whether the miner was engaged in an employment relationship for a period of one calendar year . . . or partial periods totaling one year" before considering whether a miner worked 125 days during that calendar year of employment.  J.A. 15.  Additionally, Respondents argue that "[a]lthough § 725.101(a)(32)'s meaning was not directly at issue in *Armco* and *Daniels,* their reasoning applies with equal force to that regulation," due to (1) the similarities between its definition of "year" and the predecessor regulations' definition of "year of employment" and (2) *Armco*'s express reliance on § 725.101(a)(32)'s text "to support the 'two-step inquiry' it gleaned from" those predecessor definitions.  DOWCP Brief at 21.

Respondents' arguments significantly overstate the applicability of *Armco* and *Daniels* to § 725.101(a)(32).  First, *Armco* and *Daniels* both acknowledged § 725.101(a)(32)'s inapplicability to the facts of those cases and consequently never substantively analyzed that revised regulation's definition of a "year" for purposes of the BLBA's fifteen-year presumption.  As such, our statement in *Armco* that § 725.101(a)(32) helps to "clarif[y]" and reinforce a two-step test under the former regulations constitutes non-binding dicta, because it "could have been deleted without seriously impairing the

30

analytical foundations of the holding," which rested on our reading of the predecessor regulations' text. *United States v. Horsley*, 105 F.4th 193, 212 (4th Cir. 2024). Further, to the extent that Respondents suggest that our interpretation of predecessor regulations in *Armco* and *Daniels* maps onto § 725.101(a)(32) with equal force, we reiterate the significant differences between the defunct regulations and the one before us today. As previously noted, § 725.101(a)(32) defines a "year," rather than a "year of employment," and omits all language related to "regular employment" or an employment relationship between a miner and an operator. These significant changes greatly attenuate the applicability of *Armco* and *Daniels*'s logic to the regulation at hand. Finally, although *Armco* and *Daniels* mention § 725.101(a)(32) in passing, these opinions never engage with the regulation or any of its subsections, which — as the *Daniels* court acknowledged — clearly contemplate situations in which a miner may establish a year of employment for purposes of the BLBA without demonstrating a year-long employment relationship. *See supra* Section III.A.1.

For all of these reasons, *Armco* and *Daniels* do not bind our interpretation of § 725.101(a)(32). We thus decline to apply *Armco* and *Daniels*'s two-step inquiry to the calculation of a "year" under this revised regulation.

5.

In arriving at our holding, we join the Sixth Circuit, the only appellate court to have definitively ruled on the meaning of a "year" in § 725.101(a)(32). In *Shepherd v. Incoal, Inc.*, 915 F.3d 392 (6th Cir. 2019), the Sixth Circuit emphatically rejected the respondents' characterization of § 725.101(a)(32) as requiring, "*in all instances,* that the miner be

31

employed by a coal mining company for a full calendar year *and* that the miner work for at least 125 days in the mines during that 365- or 366-day period." *Id.* at 401 (emphasis in original). The Sixth Circuit noted that such an interpretation "ignores the clear language of the regulation" and the "underlying intent of the BLBA," which should be "liberally construed so as to include the largest number of miners within its entitlement provisions." *Id.* at 401, 402 (internal quotation omitted). The Sixth Circuit further described § 725.101(a)(32)'s subsections as elucidating "four alternate ways in which a claimant can establish requisite periods of coal mine employment," emphasizing in particular subsection (iii)'s application to miners whose employment has "lasted less than a calendar year." *Id.* at 401, 403. As our sister court correctly highlights, that subsection "expressly provides that even if a miner cannot show that he or she was employed by a mining company for a calendar year, he or she *still can be credited with a year of coal mine employment.*" *Id.* at 403 (emphasis added). *Shepherd*'s central conclusion — that the plain language of § 725.101(a)(32) and its subsections require a miner to show only that he worked 125 working days within a calendar year (or partial periods totaling one year) to establish a year of employment — comports with our own analysis of the regulation, its context and history, and the BLBA's purpose. We therefore join its analysis and holding.

### B.

In the proceedings below, the ALJ concluded that Baldwin failed to establish eligibility for the BLBA's fifteen-year presumption set forth in 30 U.S.C. § 921(c)(4). He arrived at this conclusion based on his incorrect interpretation of the regulation, requiring proof by the miner of a full year of employment without regard to the number of days that

32

the miner actually worked in or around the mines. The ALJ did not make findings as to the number of "working days" that Baldwin spent in or around coal mines during his five partial years of employment, and instead improperly focused on Baldwin's total years of employment. In light of our holding today, which establishes that a miner need only show that he has worked 125 "working days" within one calendar year (or partial periods totaling one year) to establish a year of employment for all purposes under the BLBA, the ALJ's failure to make the relevant findings concerning Baldwin's "working days" within his partial years of employment constitutes error. After making his findings as to the beginning and end dates of Baldwin's employment with Island Creek, the ALJ should have then calculated the number of "working days" within each year-long period that Baldwin spent working in or around a coal mine. Then, after determining the number of years in which Baldwin worked in or around a coal mine for at least 125 days, the ALJ should have decided whether, having applied all relevant presumptions in § 725.101(a)(32), Baldwin stood eligible for § 921(c)(4)'s fifteen-year presumption. If he found that Baldwin's years of employment triggered the rebuttable presumption, he should have then analyzed whether Island Creek rebutted that presumption with appropriate evidence.

Thus, we find that the ALJ erred in applying the provisions of § 725.101(a)(32) when calculating Baldwin's years of employment; consequently, we also necessarily find that he erred in his methods of calculating Baldwin's work history for purposes of the BLBA's fifteen-year presumption.

33

IV.

For the foregoing reasons, we grant the petition for review, vacate the Board's decision and remand with instructions for the Board to return Petitioner's case to the ALJ for reconsideration consistent with this opinion.  On remand, the ALJ must consider all evidence in the record to determine how many "working days" Baldwin worked in each calendar year or partial periods totaling one year.  Only after making a specific finding as to Baldwin's working days within each calendar year or partial periods totaling one year may the ALJ determine whether Baldwin has demonstrated the fifteen years of coal mine employment necessary to invoke the rebuttable presumption in 30 U.S.C. § 921(c)(4).  If the ALJ finds that Baldwin does qualify for the BLBA's fifteen-year presumption, he must subsequently determine whether Island Creek has rebutted that presumption to determine Petitioner's eligibility for BLBA benefits.

*VACATED AND REMANDED*